UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CHRISTY RAMIREZ,

Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

Defendant.

No. 1:20-cv-00515-GSA

**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**

**(Doc. 20)**

## I.     Introduction

Plaintiff Christy Ramirez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI, respectively, of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 17, 20, 21. After reviewing the record the Court finds that substantial evidence and applicable law do not support the ALJ's decision. Plaintiff's appeal is therefore granted.

## II.     Procedural Background

On August 3, 2016 Plaintiff applied for disability insurance benefits and supplemental security income alleging disability as of June 1, 2016 due to diabetes, high blood pressure and stroke. AR 163–175, 194. The Commissioner denied the applications initially on January 11, 2017, and on reconsideration March 27, 2017. AR 90–94; 101–105.

Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on January 4, 2019. AR 26–65. Plaintiff was represented by counsel at the hearing. AR

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 7 and 10.

26. On April 3, 2019 the ALJ issued a decision denying Plaintiff's application. AR 10–21. The Appeals Council denied review on February 12, 2020. AR 1–6. On April 10, 2020 Plaintiff filed a complaint in this Court. Doc. 1.

### III. Factual Background

#### A. Plaintiff's Testimony

Plaintiff lived in an apartment. AR 33. Her room was on the second floor. AR 33. She lived with her three children ages 6 to 14. AR 33. She attended some college but obtained no degree or certification. AR 34. She previously worked as a teller supervisor at Wells Fargo, an analyst at Aetna Life Insurance, a program technician for the State of California, and as a data typist at a mortgage company. AR 34–38.

Plaintiff lost her job after calling in sick to care for her children following her husband's incarceration. AR 50. Two weeks later she suffered a stroke. AR 50. Plaintiff was right-handed but had to begin doing everything with her left hand after suffering a stroke. AR 40. She was unable to prepare meals or open jars without assistance. AR 40. She could not stand for a long time, or open her hand sufficiently to hold a dish. AR 40. She had difficulty vacuuming. AR 40–41. She could not write with her right hand or hold a pen. AR 41. She used a cane indoors and walker outdoors. AR 42. She used a brace on her right foot to help with her foot drop. AR 43. She did not drive. AR 43. Her anxiety medication caused drowsiness but her medications did not otherwise cause side effects. AR 44. He son did pretty much everything for her. AR 44. She used Lyft, Uber or the bus to get to her medical appointments. AR 45.

She always had someone accompany her when she left the house because she had balance issues and was afraid of falling. AR 45. She had fallen previously notwithstanding the use of assistive devices. AR 46. She fell on the steps going to her room and hit her head. AR 46. She could walk 7 to 10 minutes before stopping. AR 47. She could carry 5 to 10 pounds on the left. AR 47. She could barely carry a gallon of milk with her right hand, but had to do so with her arm extended downwards; she could not lift it up. AR 48. She could not fully extend her right arm outward into a cupboard to take out a plate. AR 48. She had memory difficulties in conversation but managed her own medications. AR 49. She could pay bills, answer mail, answer phone calls

and address mail on her own. AR 49. She relied on calendar reminders on her phone. AR 49. She received in home supportive services. AR 50. She required assistance bathing, dressing, doing chores, caring for her children, walking and other aspects of daily living. AR 50.

**B.** **Vocational Expert**

The VE classified Plaintiff's past work as follows: 1) insurance sales agent: skilled, light; 2) insurance clerk: semi-skilled, sedentary; 3) lead teller: skilled, sedentary (light as performed). AR 53.

The ALJ questioned the VE regarding a hypothetical individual with Plaintiff's vocational profile who could perform light exertional work with the following limitations: cane use for uneven terrain; frequently push and pull with the right (dominant) upper extremity; occasionally perform some postural activities and never perform others; frequently handle and finger with the right upper extremity; occasionally perform overhead reaching with the right upper extremity; no use of heavy machinery with fast moving parts; no exposure to unprotected heights. AR 55–56. The VE testified that such an individual could perform Plaintiff's past work as an insurance clerk and other jobs existing in significant numbers in the national economy, namely: ticket counter worker; charge account clerk; and telephone quote clerk. AR 56–58.

The ALJ posed a second hypothetical reducing right upper extremity pushing, pulling, handling and fingering from frequent to occasional. AR 56. The VE testified that such an individual could not perform Plaintiff's past work or other work in the national economy. AR 57. If the individual in hypothetical one or two required two unscheduled breaks each day of 10-minute duration, no work would be available. AR 59.

If the individual in hypothetical one was further limited to occasional reaching in all directions with the right dominant upper extremity, the individual could still perform Plaintiff's past work as an insurance clerk and the other identified jobs existing in significant numbers in the national economy. AR 61. If the individual could perform no reaching whatsoever with the right hand, regardless of distance, all work would be precluded. AR 61. If the individual was off task 15 percent of the workday due to fatigue, no work would be available. AR 62. The VE testified that none of her answers contradicted the DOT. AR 62.

3

## C. Medical Records

Plaintiff suffered a stroke in June 2016. On June 11, 2016 she reported weakness in her right arm and leg weakness beginning three days prior. AR 320. She demonstrated impaired strength and coordination in her right arm and leg, gait impairments and toe drag. AR 315. She required a right sided rail for stairs and a walker to walk. AR 315. Plaintiff exhibited 3/5 strength in her right arm and 4/5 strength in her right leg. AR 322. She could open and close her hand but not hold any object. AR 322. Head imaging revealed intracranial atherosclerotic disease, acute/subacute infarct involving the left pons and chronic microvascular disease, but no intracranial hemorrhage or evidence of acute ischemia. AR 345–46. She had right facial droop and slurred speech which resolved two weeks after discharge. AR 640.

Thereafter she underwent three months of home physical therapy. AR 388–634. At discharge from home physical therapy she could use stairs one foot at a time. AR 602. She could ambulate on level surfaces without a cane. AR 602. She was referred to outpatient physical therapy to improve her gait and continued home exercise pending referral. AR 594–602.

A February 2017 neurological examination revealed right upper and lower extremity weakness of 4/5. AR 643. She had intact sensation, a slow gait and right drop foot. AR 643. Medications were adjusted and additional physical therapy was ordered. AR 643–44.

As of April 2017 she reported activities such as walking, gardening, and swimming 30 minutes daily. AR 663–64. She could bathe, eat, walk and use the bathroom without assistance. *Id.* She followed up with primary care throughout 2017 and 2018. Records noted some continued motor weakness on the right side, but also included several normal neurological and musculoskeletal examinations. AR 666–79.

In April 2017, Plaintiff was fitted for orthotics to address foot drop. AR 648–650. She exhibited adequate range of motion and walked safely without discomfort. AR 650. In June 2017 she was provided therapeutic shoes. AR 654. She was able to walk without discomfort and don and doff the shoes independently. AR 654.

#### D.  Medical Opinions and Administrative Findings

On December 21, 2016, Dr. Sachdeva performed a consultative physical examination at the request of the agency. Plaintiff reported improved facial droop, persistent right-sided weakness and an inability to do much around the house.  AR 272.  She walked with a cane in her right hand.  AR 274.  Her grip strength was zero on the right and 20 pounds on the left.  AR 274.  Range of motion was reduced in her right shoulder but was otherwise normal.  AR 275–76. She had mild upper extremity atrophy but otherwise good muscle tone.  AR 276.  Her right extremity strength was 4/5, her sensation was intact and her gait was normal.  AR 276.  Dr. Sachdeva opined that Plaintiff was capable of performing a range of light work with no manipulative limitations other than limited right shoulder reaching.  AR 277.

Non-examining state agency physicians C. Bullard, M.D., and R. Fast, M.D., reviewed Plaintiff's medical file at the initial and reconsideration levels, respectively.  Both opined that Plaintiff could perform a limited range of light work with restrictions including occasional overhead reaching with the right arm, frequent handling or fingering with the right hand and the use of a cane for walking on uneven terrain.  AR 72–74; 85–87.

Plaintiff's primary care physician, Dr. Rad, filled out a certification form for in-home supportive services on which he indicated that Plaintiff was unable to independently perform one or more activities of daily living including washing, showering, cooking or cleaning and that she would be limited in those respects for at least 12 months.  AR 677.

### IV.  Standard of Review, Generally

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See*

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).  When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V.      The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically

determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy, given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## VI. The ALJ's Decision

At step one the ALJ found that Plaintiff had partially engaged in substantial gainful activity since her alleged onset date of June 11, 2016. AR 24. The ALJ noted that Plaintiff's file showed earnings in 2017, but that Plaintiff claimed the earnings were not hers and had submitted an "Identity Theft Affidavit to the Internal Revenue Service." AR 12 (quotation in original). Accordingly, the ALJ proceeded with the five-step analysis. At step two the ALJ found that Plaintiff had the following severe impairments: history of cerebrovascular accident and obesity. AR 12. The ALJ found that Plaintiff's hypertension and diabetes mellitus were non-severe. AR 13. At step three the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 13.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform a reduced range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with the following limitations: stand/walk four hours; sit for six hours; cane use when traversing uneven terrain; frequently push, pull, handle and finger; occasionally perform some postural activities and never perform others; never work around heavy machinery with fast moving parts; never work around unprotected heights. AR 13–14. At step four the ALJ found that Plaintiff could perform her past relevant work as an insurance clerk. AR 19. At step five the ALJ found that Plaintiff could also perform jobs existing in significant numbers in the national economy, namely: charge account clerk and telephone quote clerk. AR 20.

Accordingly, the ALJ found that Plaintiff had not been under a disability since her alleged onset date of June 11, 2016. AR 20.

## VII. Issues Presented

Plaintiff alleges three errors in the ALJ's analysis. First, Plaintiff contends the ALJ failed to offer sufficient reasoning for rejecting her subjective symptomology. Second, Plaintiff contends the RFC was not supported by substantial evidence. Third, Plaintiff contends that the ALJ failed to provide sufficient reasoning for rejecting the opinion of her treating physician, Dr. Rad.

Plaintiff's first and second arguments are intertwined and therefore will be addressed together. She first argues that the ALJ should have credited her symptomology concerning her ongoing right-side impairments and should have included corresponding limitations in Plaintiff's RFC. As such, in her second argument Plaintiff contends the ALJ's RFC was deficient in that it failed to include those limitations.

Plaintiff's third argument concerns a one-page certification form for in-home supportive care services (IHSS) on which Dr. Rad recommended IHSS because Plaintiff was unable to independently perform "one or more" ADLs due to conditions and limitations that would persist for 12 months. AR 677. The document did specify the conditions or limitations in question, or the clinical findings in support. Existing case law does suggest that an ALJ should not reject a treating physician's opinion solely because it was offered in a different context than social security proceedings (such as worker's compensation).[2] Nevertheless, Plaintiff offers little to no explanation as to what changes to her RFC, if any, would have logically followed had the ALJ credited the IHSS certification form as true.

In any event, because the Court finds the ALJ's decision unsupported for independent reasons, remand is appropriate without regard to Plaintiff's third argument.

### A. Plaintiff's Subjective Symptomology; RFC

#### 1. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual

---

[2] *See, e.g.*, *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1103 (C.D. Cal. 2002).

functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

The ALJ is responsible for determining credibility,[3] resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

---

[3] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and, any other relevant evidence included in the individual's administrative record. S.S.R. 16-3p at 5.

## 2. <u>Analysis</u>

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and found no malingering. AR 19. Thus, the ALJ was required to articulate clear and convincing reasons for rejecting Plaintiff's reported symptoms. *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). After reciting Plaintiff's subjective testimonial evidence, but prior to discussing the objective and opinion evidence, the ALJ stated as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical

evidence and other evidence in the record *for the reasons explained in this decision.*

AR 15 (emphasis added).

Plaintiff first contends that this language was criticized by the Ninth Circuit in *Laborin* as "problematic" in that it "subverts the way an RFC must be determined relying on credible evidence, including testimony." Br. at 8–9. *Laborin v. Berryhill*, 867 F.3d 1151, 1154 (9th Cir. 2017). Plaintiff is incorrect. *Laborin* did not involve the above-quoted language. Rather, in *Laborin* the court took issue with the ALJ's practice of explaining the RFC analysis first and then rejecting a claimant's testimony "to the extent that testimony was inconsistent with the above RFC," a practice which "inverts the responsibility of an ALJ, which is first to determine the medical impairments of a claimant based on the record and the claimant's credible symptom testimony and only *then* to determine the claimant's RFC." *Id.* (emphasis in original). Thus *Laborin* is inapplicable here.

Although the initial language used by the ALJ here was certainly boilerplate, it indicated to the reader that additional explanation was to come. *See* AR 15 (". . . for the reasons explained in this decision."). Provided the additional explanation does eventually come, there is nothing problematic about an ALJ reciting the relevant regulatory language under S.S.R. 16-3p. Here, the additional explanation did eventually come though it was ultimately inadequate for the reasons explained below. Indeed, Plaintiff discussed that additional explanation on the very next page of her brief. Plaintiff's argument is not strengthened by initially focusing on the ALJ's boilerplate language, considering 1) the ALJ included a more detailed explanation thereafter, 2) *Laborin* noted that "flawed boilerplate language is not, by itself, reversible error", and 3) the boilerplate language here did not resemble the boilerplate language at issue in *Laborin*.

Turning now to the full explanation the ALJ provided for discounting Plaintiff's subjective symptomology, the ALJ noted as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects
> of his or her symptoms, they are inconsistent because the claimant's testimony was

11

inconsistent with the medical evidence, which does not support the level of alleged impairment. At the time of discharge from her home health physical therapy, three and a half months from her cerebrovascular accident, the claimant was able to ambulate with and without a cane on level surfaces without difficulty, and was able to ascend and descend stairs one-step at a time (Exhibit 4F, p. 215). *While she appeared to have no grip strength in her right hand*, the claimant's motor strength in her right upper and lower extremity was 4/5 on December 22, 2016, there was minimal atrophy was noted on the right upper extremity, but the rest of the muscles had good tone and no atrophy. She had full range of motion in her back and joints except for her right shoulder, which was mildly restricted inflexion, rotation and abduction. Sensation was intact. Finger to nose was intact, and Romberg test was negative. Dr. Sachdeva noted the claimant had a normal gait (Exhibit 2F, pp. 3-5). In June 2017, the claimant was observed ambulating safely and without discomfort at her fitting of therapeutic diabetic shoes (Exhibit 6F, p. 7).

The objective finding of zero right hand grip strength during the consultative examination is particularly notable given the claimant's detailed testimony that she could not write with her right hand, hold a pen, open a jar, hold a dish, lift up a gallon of milk or take a plate out of a cupboard. AR 40, 41, 48. The testimony is further corroborated by June 2016 records following her stroke. Prior to discharge, she was "able to open and close fingers, but unable to hold any object" with her right hand. AR 322. The ALJ found Plaintiff's testimony generally inconsistent with the medical evidence. Simply put, although Plaintiff's testimony may have been inconsistent with the medical evidence in some non-dispositive respects, it was consistent with the medical evidence as to a dispositive issue, namely Plaintiff's capacity to perform handling and fingering.

Much like Defendant did in the response brief, the ALJ briefly acknowledged the objective finding of zero grip strength ("While she appeared to have no grip strength . . .") brief attention then moved past it and focused on unrelated objective findings. The ALJ's use of the word "while" suggests that the objective findings she recited thereafter somehow undermined the finding of zero grip strength, and/or supported Plaintiff's ability to handle and finger. Not so. Neither the ALJ nor the Defendant identified any countervailing objective findings regarding grip strength or related to handling and fingering capacities.

The ALJ noted that Plaintiff had 4/5 muscle strength (often referred to as motor strength)

in her right upper extremity. Upper extremity muscle strength does not necessarily include grip strength and is not necessarily relevant to handling and fingering capacities. The parties both cite sources noting that muscle strength generally refers to muscle activation against resistance, which Plaintiff believes has nothing to do with grip strength while Defendant apparently believes the opposite. Neither belief is explained. Literature on clinical muscle strength grading provides that the muscles commonly tested for strength can include, for example, "finger flexors," "hand intrinsic," and "thumb abductors."[4] Grip strength can also be "semiquantitatively measured with a handgrip ergometer or with an inflated BP cuff squeezed by the patient."[5] Thus, muscle strength grading can, and often does, include grip strength grading.

There is no basis here, however, to conclude that the finding of 4/5 strength "in the right upper extremity" (RUE) included grip strength. In fact, there is every reason to conclude the opposite. The 4/5 RUE strength finding referenced by the ALJ was derived from the consultative examination results (under the heading "neurological"), the same consultative examination which noted a finding of zero right hand grip strength under a separate heading labelled "vital signs." AR 274, 276. Thus, the CE's finding of 4/5 RUE strength did not include grip strength. Although 4/5 RUE strength may indicate functionality as to pushing/pulling and lifting/carrying, grip strength is more logically associated with the finer manipulative capacities of handling and reaching. *See* SSR 85-15 (noting that handling refers to "seizing, holding, grasping, turning," and fingering refers to "picking, pinching, or otherwise working primarily with the fingers."). As explained above, Plaintiff testified in detail that she was extremely limited in those respects. The 4/5 RUE strength finding did not undermine that testimony, nor did it contradict the findings of zero grip strength

---

[4] Muscle Strength Grading, National Center for Biotechnology information, available at https://www.ncbi.nlm.nih.gov/books/NBK436008/ (last visited on 6/22/2021).
[5] https://www.merckmanuals.com/professional/neurologic-disorders/neurologic-examination/how-to-assess-muscle-strength

and inability to hold objects with her right hand.

Similarly, the ALJ recited a number of other unrelated objective findings regarding Plaintiff's back range of motion, ability to ambulate effectively with or without the use of an assistive device, ability to traverse even or uneven terrain, and ability to ascend/descend stairs. These are largely all peripheral considerations with minimal, if any, impact on the Plaintiff's ability to perform the sedentary jobs the VE identified, none which require significant ability in those areas. Handling and fingering abilities, on the other hand, are of significant importance in a sedentary working environment. *See* SSR 96-9 ("Any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base" . . . "Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions."). Recognizing that fact, the ALJ posed hypotheticals to the VE with progressively increasing manipulative restrictions, and the VE testified that all work would be precluded if Plaintiff's handling and fingering ability was reduced from frequent to occasional. AR 57. The ALJ's ultimate RFC formulation stopped just short of that, limiting Plaintiff to frequent handling and fingering. That conclusion was not supported by substantial evidence.

The ALJ discounted the CE's opinion precisely because the CE failed to include any handling and fingering limitations notwithstanding the objective finding of zero grip strength. AR 18. The ALJ determined that the appropriate level of limitation was to frequent handling and fingering. However, there was an insufficient basis for the ALJ to conclude that a finding of zero grip strength translates into a limitation to frequent handling and fingering (2/3 of the day), as opposed to occasional handling and fingering (1/3 of the day), or (perhaps most logically of all) no handling and fingering.

As discussed above, the only relevant objective findings noted in the ALJ's opinion

reflected that Plaintiff was unable to hold objects with her right hand following her stroke in June 2016 (AR 322), and demonstrated zero grip strength on examination by the CE 6 months later (AR 274). There were no countervailing objective findings. The nearest objective finding Defendant notes is that Plaintiff held her cane in her right hand during the CE exam. Importantly though, the ALJ did not mention that fact, much less draw any inferences from it.

The only potentially countervailing subjective evidence identified in the ALJ's opinion were the Plaintiff's reported ADLs of gardening, swimming, bathing, eating, dressing, donning and doffing shoes. However, the ALJ only recited these ADLs in her summary. She did not identify Plaintiff's ADLs specifically or generally as a basis for rejecting Plaintiff's testimony. Moreover, Plaintiff testified that she had been doing everything with her left hand since the stroke, a process which took some getting used to because she was previously right hand dominant. AR 40. The identified ADLs can conceivably be performed with one hand by an individual retraining their left hand to be dominant (though perhaps not particularly effectively). The same cannot be said about sustaining gainful employment in a sedentary working environment. See SSR 96-9 ("Any significant manipulative limitation of an individual's ability to handle and work with small objects *with both hands* will result in a significant erosion of the unskilled sedentary occupational base.") (emphasis added). Indeed, the VE testified that a limitation to occasional handling and fingering would be work preclusive even if the individual was retraining her unaffected hand to be the dominant hand. AR 56. The individual "would require an accommodation for her to be able to use voice activated," and the VE would be "hard pressed" to find such jobs. AR 57.

Finally, as for countervailing opinion evidence, Defendant underscores the non-examining opinions which concluded that Plaintiff could handle and finger frequently. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*,

278 F.3d 947, 957 (9th Cir. 2002) *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Those opinions were not consistent with independent clinical findings or other evidence in the record, however. Again, the only clinical findings on the subject noted an inability to hold objects with her right hand and zero grip strength, findings which the ALJ concluded undermined the CE's opinion that Plaintiff could handle and finger without limitation. Those findings also tend to undermine the non-examining opinions that Plaintiff could handle and finger frequently.

## VIII. Conclusion and Remand for Further Proceedings

In summation, the ALJ rejected Plaintiff's subjective symptomology collectively as "inconsistent with the medical evidence, which does not support the level of alleged impairment." AR 18. Although Plaintiff's statements may have been inconsistent with the medical evidence in some respects, her statements regarding her limited use of her right hand were consistent with medical evidence, namely inability to hold items and zero grip strength. The ALJ's error was harmful given the VE's testimony that a reduction from frequent to occasional fingering and handling would be work preclusive. Remand is therefore appropriate for the ALJ to give specific consideration to Plaintiff's oral and written statements concerning her limited use of her right hand, and to reexamine whether to accept or reject those statements. Remand is also appropriate for the ALJ to give specific consideration to the clinical findings of zero grip strength and inability to hold items with her right hand (as well as any other clinical findings directly relevant to handling and fingering capacities) and to consider whether those findings warrant changes to Plaintiff's RFC. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Generally when a court . . . reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

## IX. Order

For the reasons stated above, the Court finds that substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is granted.  The Clerk of Court is directed to enter judgment in favor of Plaintiff Christy Ramirez, and against Defendant Andrew Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **June 26, 2021**            **/s/ Gary S. Austin**
                                      UNITED STATES MAGISTRATE JUDGE